[Civ. No. 3467.  Third Appellate District.—April 12, 1928.]

J. W. JOHNSON, Appellant, v. MARIE SCHIMPF, Respondent.

Charles A. Wetmore, Jr., and George F. Jones for Appellant.

W. E. Davies, Warren Steel and Warren Olney, Jr., for Respondent.

BARTLETT, J., *pro tem.*—This is an appeal from an order setting aside the verdict of the jury in favor of appellant and granting defendant a new trial. Plaintiff also appeals from an order of the trial court striking out his costs on appeal awarded on a previous appeal.

The action was brought to recover the sum of $4,000 damages for an alleged breach of contract to convey certain real properties situated in the city of Marysville, California. A demurrer to plaintiff's amended complaint was sustained by the trial court without leave to amend, plaintiff appealed from the judgment entered, and the district court of appeal affirmed the judgment of the lower court, but on a hearing in the supreme court the judgment of the superior court was reversed. Defendant then answered the amended complaint and the case was tried before the superior court of Yuba County and a jury. The verdict rendered was for the sum of $3,250.

The following is the order of the trial court made in granting defendant's motion for a new trial:

("Title of court and cause.)

"In the above entitled matter, the defendant, Marie Schimpf, moves for a new trial upon practically all the statutory grounds, which said motion has been argued by

respective counsel and submitted to the Court for its decision. The grounds relied upon are specified in the notice of motion, and are: the damages appear to have been excessive; insufficiency of the evidence to justify the verdict; the verdict is against law; errors of law occurring at the trial.

"The action was brought by plaintiff to recover damages alleged to have been sustained by plaintiff because of the breach by defendant of a contract to convey real property. It will be unnecessary to set out the facts alleged in plaintiff's complaint in detail.

"The Court has carefully reviewed the testimony given by the plaintiff and his principal witness, E. E. Venters, upon the trial, and is satisfied that error was committed in the giving to the jury, at the request of plaintiff, of certain instructions, bearing upon the measure of damages found in Section 3306, C. C., within the provisions of which section the Supreme Court, on appeal, held that the complaint herein alleged facts constituting a cause of action. The Court held on said appeal that plaintiff's recovery should be limited by the concluding clause of said Section 3306, C. C., viz.: 'in case of bad faith . . . , the expense properly incurred in preparing to enter upon the land.'

"Plaintiff claims that he purchased of and from Venters, upon defendant's promise and agreement to sell plaintiff certain land, with the full knowledge, consent and approval of defendant, the slaughterhouse, shed, corrals and appurtenances on said land of defendant, and paid said Venters therefor the sum of $4000, in lawful money of the United States of America, *the reasonable value thereof,* and entered into possession of the premises with the knowledge and consent of defendant and pursuant to said agreement for the purchase of the land, which plaintiff claims defendant promised to sell for $800 per acre.

"His whole testimony shows that Mrs. Schimpf never at any time represented Venters to be the owner of all the slaughterhouses, sheds, corrals and other structures upon the land, but pointed out to him a portion only thereof as the property of Venters. His testimony shows he entered into possession of said property on or about March 10, 1923, and remained in possession thereof until on or about the first day of September, 1923, during which time he conducted the business of wholesale meat dealer.

"The case was tried upon the theory that all material averments of the complaint were denied and were in issue, for the defendant denied the alleged oral or verbal agreement with plaintiff *in toto,* and denied that Venters, her tenant under a lease in evidence, had any ownership in any of the structures upon said land, which were all a part of the realty. In support of her denials, she introduced the lease, subsisting at the time of the alleged transaction with plaintiff, between herself and her tenant Venters.

"A careful scrutiny of the evidence will show that Venters, prior to and at the time plaintiff began his negotiations to acquire the property, was carrying on a wholesale butcher and slaughterhouse business; and although plaintiff himself declared that the sum of $4000 was paid by him solely for the structures claimed by Venters, Venters, by whose testimony plaintiff is bound, testified as follows: 'Q. By Mr. Carlin. Now, you say you told Mr. Johnson you would take $4000, did you have a business there? A. Had my slaughterhouse there, yes. Q. You had your slaughterhouse there, didn't you? A. Yes. Q. You were selling the business too? A. Selling what I had there. Q. All the improvements and your business, didn't you, that went with it? A. *Well, yes, he took that over.'* (Testimony of Venters, pages 4 and 5.)

"This conclusively shows that the sum of $4000 paid included not only an amount paid for certain structures and improvements, but for the business of Venters as well, and throughout the testimony there is not a scintilla of testimony which would enable the jury to ascertain the value of that business, which, according to Johnson's own testimony, was the principal thing he wished to buy. Of the total sum of $8389, paid by Johnson to Venters, the excess over $4000 was paid for livestock upon an inventory of the same, and was not in any sense a payment for the business.

"The instructions of plaintiff do not call attention to this important element of value of the business purchased by Johnson, and, as stated, there is no evidence to throw light upon that matter. Johnson took that business with him when he left the premises and established it on another piece of land about a mile north of the old location.

"There is no testimony at all in the case upon the reasonable value of the structures owned or claimed to have

been owned by Venters, and there was nothing before the jury to show whether the price paid by Johnson was *the reasonable value thereof, as alleged in the complaint, or not.* But, conceding, for argument's sake, that $4000, the price paid, was the reasonable value of all of the slaughterhouses and other structures on the premises, some of them concededly belonged to defendant, as, for instance, the slaughterhouse which was there before Venters ever entered upon the premises; there was no testimony pointing out to the jury the particular structures covered by the alleged transaction between Johnson and Venters, and no testimony to indicate whether $4000 was a reasonable price for the structures claimed to be owned by Venters, or not.

"Under the averments of the complaint, Johnson entered into possession of the premises on or about the 10th of March, 1925, remained in possession until the following September, during which interval he was in possession of all of the property, including all the structures upon the land—those concededly Mrs. Schimpf's, as well as those claimed by Venters—conducting his wholesale butcher business, for all of which use and occupancy no allowance was made by him in the reduction of his damages, if any, occasioned by her alleged breach of contract to sell the land. Such use and occupancy must have had a very considerable value, and evidence upon that matter should have been offered, not only by the defendant, who denied the existence of any executory contract of sale and also denied any and all damage to plaintiff, but by plaintiff also, and the burden was upon him to establish his actual damage.

"Testimony was offered as to the value of certain structures not definitely described, but consisting of some corral fencing removed from the premises by plaintiff. Plaintiff declared in one part of his testimony that what he took away was of no value, but subsequently corrected that statement by saying it amounted to not more than $50. The jury evidently rejected his testimony, and made an allowance apparently of $750 from the amount of damage claimed, and there is no possible way to determine how the jury found the credit of $750, because except for Johnson's own testimony, there was none at all as to the value of the removed property. It is argued that because the jury placed the credit for the removed property at a much larger figure

than named by plaintiff in his testimony, defendant has no right to complain. That argument, however, seems unsound, for perhaps the credit should have been a much larger sum than $750, particularly in view of Johnson's statement that upon his removal he endeavored to tear down fences and corrals so that the premises could not again be used for the conduct of a slaughterhouse and wholesale butcher business. This points to the fact that the verdict was not based upon any evidence adduced upon the trial. It also illustrates that if credit in reduction of damages should have been given, and perhaps was given by guess, for structures and property removed from the premises, further credit should have been given also for the use and occupancy from March to September. It seems apparent also that if the structures were reasonably valued at $4000, as they stood on the premises for the purposes of the business there carried on, one wrongfully deprived of their use, in destroying or removing some of them, should allow in reduction of his own claimed damage their proper value as they stood prior to the destruction or removal. If, by tearing down and removing parts of them, he could claim such parts had only a nominal value under $50, when, as they stood he claimed they were very much more valuable, perhaps to the value of $4000, he could not enhance his own damage by their removal or destruction, without giving due credit to the amount of their value when in place on the land.

"The foregoing considerations lead me to conclude that instructions numbered 13, 14, 15 and 16, given at plaintiff's request, were erroneous and misleading.

"Instruction number 10, also given at the request of plaintiff, in theory drawn in an attempt to conform to the doctrine of estoppel mentioned in *Johnson* v. *Schimpf*, 197 Cal. 43 [239 Pac. 401], in conclusion therein, after the hypothetical statement of facts, that 'it makes no difference whether Venters was, in fact, the owner of the building or not,' may perhaps be a correct statement of law, but seems to me to impinge upon the constitutional inhibition against instructing jurors upon questions of fact. It is apparent that the statement 'it makes no difference whether Venters was, in fact, the owner of the buildings or not,'

may have misled the jury into disregarding all the evidence as to the ownership for all purposes. The jury had the duty and the right to consider that question of ownership in weighing the probabilities and the truth as to the alleged oral agreement between plaintiff and defendant. Plaintiff testified flatly that defendant verbally promised, in the event of his buying Venters' improvements on the land, that she would sell the land to him. Defendant flatly denied any such agreement. There were no other persons immediately present except plaintiff and defendant at the conversation.

"The evidence in the case, including the lease between Venters and the defendant, and the testimony that the slaughterhouse was on the premises when Venters first entered under his lease, established without contradiction that Mrs. Schimpf in fact owned all the buildings and structures as a part of the realty, excepting perhaps a few panels of fencing not attached to the soil. It seems improbable that the actual owner, without any apparent, rational motive, would have misrepresented and falsely stated that someone else owned her property, when an ostensible purchaser was trying to buy that same property, and when she admittedly, according to plaintiff's own testimony was trying to obtain the largest possible price for her premises. There is no evidence of any agreement, either verbal or written, whereby Mrs. Schimpf had ever given or granted any rights to Venters in and to the property other than he had by virtue of his lease. It, therefore, was very important for the jury to consider the fact as to the real ownership of the improvements in determining whether or not the main agreement for the sale of the land was in fact as claimed by plaintiff, verbally consummated.

"In the opinion of the Court, the plaintiff would only be entitled to recover damages in this case at all under the last clause of Section 3306, C. C., after establishing by a preponderance of the evidence the existence of the executory oral agreement claimed by him. The preponderance does not appear in that respect to be with the plaintiff, unless the jury considered that foolish and unreasonable statements and promises against her own interest were made by Mrs. Schimpf at the time of the alleged transaction. If the jury rejected, under instruction 10 above cited and under the

theory of estoppel, for all purposes, the testimony as to ownership, the contrary conclusion as to the main agreement, which plaintiff is not seeking to enforce in this proceeding, might well have been reached.

"Now, therefore, in consideration of the premises, it is hereby ordered, adjudged and decreed that the defendant's motion for new trial be and it hereby is granted.

"Dated: July 15, 1926.

"EUGENE P. McDANIEL, Judge."

It is apparent from the foregoing order that the trial court came to the conclusion that the verdict was against the weight of the evidence and that certain erroneous instructions were given. The order should be affirmed if the court's action can be sustained on either of those grounds. An inspection of the record discloses two main issues of fact in the case arising under the pleadings, both of which had to be determined in plaintiff's favor to justify a verdict in his favor.

The damages sought are for breach of an alleged contract of the defendant to sell certain land to plaintiff. Whether the contract was oral or written does not appear from the complaint, but the evidence at the trial discloses that the contract, if any, was an oral one. Its making is positively denied by the answer of defendant. Whether or not there was a contract of defendant to sell any land to plaintiff was therefore a most vital issue in the case.

The damages sought were not the damages ordinarily arising through breach of a contract to convey or sell real property but depend entirely upon determining that the refusal to convey the lands was in bad faith on the part of defendant, and the measure of the damages recoverable, even if defendant's bad faith was shown, was the expenses properly incurred by defendant in preparing to enter upon the land, in accordance with the rule prescribed in section 3306 of the Civil Code.

Plaintiff claimed that he was misled by statements of defendant into paying one Venters $4,000 for buildings on the property, which, plaintiff alleged, Venters, a lessee of defendant and in possession of the property, represented he owned, which statement he alleges defendant confirmed by her oral declarations made to him when he negotiated with

her for a sale of the lands on which the buildings were situated. The reasonable value of the buildings is alleged in the amended complaint to be the sum of $4,000. Outside of the statement of plaintiff that he paid Venters $4,000 for the buildings there is nothing in the evidence offered to show what was the reasonable value of the buildings on the property. Part of the structures were removed from the land after defendant refused to make and execute a deed and the evidence is not at all clear or satisfying as to the reasonable value of the property so removed. There is a flat conflict in the evidence on all the material issues in the case and it does not disclose or suggest a motive or reason for defendant representing that her lessee and not herself owned the buildings or structures placed on her premises. Her lease to Venters introduced in evidence is silent as to the disposition of improvements on its termination and the improvements made as disclosed by the evidence were of the character which would ordinarily be deemed affixed to the land in the absence of an agreement providing for their removal by a lessee at the termination of his leasehold.

A consideration of all the evidence offered amply supports the conclusion of the trial court that the verdict of the jury was against the weight of the evidence. The rule laid down by the supreme court in *Wendling etc. Co.* v. *Glenwood etc. Co.*, 153 Cal. 411 [95 Pac. 1029], *Warner* v. *Thomas etc. Works*, 105 Cal. 409 [38 Pac. 960], *Gordon* v. *Roberts*, 162 Cal. 509 [123 Pac. 288], *Empire Investment Co.* v. *Mort*, 169 Cal. 732 [147 Pac. 960], *Tweedale* v. *Barnett*, 172 Cal. 271 [156 Pac. 483], *Bjorman* v. *Fort Bragg R. R. Co.*, 92 Cal. 500 [28 Pac. 591], *Domico* v. *Carassa*, 101 Cal. 411 [35 Pac. 1024], that a motion for a new trial on the ground of the insufficiency of the evidence to justify the verdict of a jury is addressed to the sound legal discretion of the trial court and that its action in granting a new trial will not be disturbed on appeal, unless it appears that there was a clear abuse of such discretion, should be applied in this case.

An examination of the instructions given which the trial court refers to and discusses in its order granting the new trial satisfies this court that the conclusion reached by the lower court that these instructions were erroneous must be sustained. The damages recoverable in this action

are limited to the expenses which plaintiff properly incurred in preparing to enter upon the lands. Plaintiff is in a position resembling that of a buyer of property who is deprived of its possession. The general rule measuring damages in such cases is deemed to be the price for which plaintiff might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession. The general rule regarding the extent of damages in all classes of actions is set forth in section 3359 of the Civil Code, which provides that damages in all cases must be reasonable. Section 3306 of the Civil Code does not provide that any and all expenses incurred by plaintiff in preparing to enter upon the lands are recoverable but limits the amount recoverable to those *properly* incurred. The ordinary meaning of the word "properly" is: "In a proper manner, suitably, fitly, strictly, rightly." The view of the trial court as to the meaning of the word "properly," as used in section 3306 of the Civil Code, when making its order granting the new trial, apparently was that it meant such sum of money as the Venters structures were reasonably worth when he sold them to plaintiff. That such was the belief of the plaintiff when he instituted this action seems manifest from the allegation in his complaint that these structures were of the reasonable value of $4,000. In the instructions given to the jury there was no direction that the reasonable value of the Venters structures was a material fact for consideration and determination. That the jury desired instructions on this question is evident from a request made by it to the court during its deliberations as to whether or not it had the authority to appraise the value of the buildings. In answer to this, the court simply reread its previous instructions, all of which are silent in this regard.

Instruction numbered 13 given the jury reads as follows: "The amount of money, if any, which plaintiff paid to Venters for the buildings and appurtenances situated upon the land in question, is an expense properly incurred in preparing to enter upon the land within the meaning of the law, if you find that any amount was so paid by plaintiff in reliance upon defendant's promise to sell and convey to him the land in question, and if you further find from the evidence, that plaintiff is entitled to damages for the breach

by defendant of the alleged agreement to sell and convey the land in question, then the amount of money, if any, so paid to Venters by plaintiff, less such amount as you may find to be the reasonable value of any of said buildings and appurtenances, if any, which you may find plaintiff did remove from the land, should be allowed to plaintiff as damages, and your verdict should be for the plaintiff and against the defendant for such amount of money.''

This instruction not only omits to instruct on the question of reasonable value of the Venters structures, but also instructs as to the facts upon which if the jury finds them to exist its verdict should be for plaintiff. The instruction sets forth certain facts which must be found, but fails to specify that before any damages can be awarded, the jury must find that the acts of defendant were in bad faith. That in this class of damage actions the bad faith of a vendor is a principal question for determination and that it is a fact for the jury to find and determine is clearly decided by the supreme court in the case of *Hamaker* v. *Bryan*, 178 Cal. 128 [172 Pac. 391].

Instructions numbered 14, 15 and 16, given at plaintiff's request, are erroneous for the same reason as is instruction No. 13, in failing to specify as matters to be considered and found upon by the jury in arriving at the amount of damage allowable, the reasonable value of the Venters structures and the bad faith of the defendant.

Plaintiff filed a cost bill after judgment in which certain costs on the former appeal of this case amounting to the sum of $110.75 were included, which items on motion were stricken out and disallowed by the trial court. It is not disputed that the *remittitur* from the supreme court was filed with the clerk of the trial court on October 15, 1925, and that the cost bill in question was not filed until May 24, 1926. Under section 1034, Code of Civil Procedure, plaintiff's cost bill for his costs in the supreme court should have been filed within thirty days after the *remittitur* was filed with the clerk of the trial court. As the statutory time for filing the cost bill had expired when it was filed, so far as costs on appeal are concerned, there is no merit in plaintiff's objection interposed to the hearing of the motion to strike out these costs on the ground of defective notice of motion to strike, as there was no jurisdiction in the trial

court, or its clerk to either allow or enter up these items. (*Emeric* v. *Alvarado,* 64 Cal. 529 [2 Pac. 418]; *Riddell* v. *Harrell,* 71 Cal. 254 [12 Pac. 67]; *People* v. *Davis,* 143 Cal. 673 [77 Pac. 651]; *Griffith* v. *Wellbanks & Co.,* 26 Cal. App. 477 [147 Pac. 986].)

The order granting a new trial is affirmed and the order striking out the items of plaintiff's costs on the former appeal is affirmed.

Hart, Acting P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 11, 1928.

All the Justices present concurred.